Record No. 14-1171

# IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

_____

ALETA POWELL,

*Plaintiff – Appellant,*

V.

PALISADES ACQUISITION XVI, LLC;
FULTON FRIEDMAN & GULLACE, LLP,

*Defendants – Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE
CIVIL ACTION NO. RDB-13-0219

_____

**RESPONSE BRIEF OF APPELLEES
PALISADES ACQUISITION XVI, LLC and
FULTON FRIEDMAN & GULLACE, LLP**

_____

Megan E. Gullace
Cynthia L. Fulton
Fulton Friedman & Gullace, LLP
28 E. Main St., Ste. 500
Rochester, New York, 14614
(602) 748-4331
megan@fultonfriedman.com
cynthia.fulton@fultonfriedman.com
*Attorneys for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1171__    Caption: __Aleta Powell v. Palisades Acquisition XVI, LLC et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Palisades Acquisition XVI, LLC__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Palisades Acquisition XVI, LLC is a wholly owned subsidiary of Palisades Acquisition XV, LLC which is a wholly owned subsidiary of Palisades Collection, LLC which is a wholly owned subsidiary of Asta Funding, Inc., a publicly held corporation

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO
    If yes, identify all such owners:
    See Response to 2, above.

10/28/2013 SCC                          - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES☐NO
If yes, identify entity and nature of interest:

    See Response to 2, above.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _Cynthia Fulton_    Date: _June 6, 2014_

Counsel for: _Palisades Acquisition XVI, LLC_

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _June 6, 2014_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_Cynthia Fulton_
(signature)

_June 6, 2014_
(date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1171__       Caption: _Aleta Powell v. Palisades Acquisition XVI, LLC et al_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Fulton Friedman & Gullace, LLP_
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.   Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                  ☐ YES ☑ NO
     If yes, identify all such owners:



10/28/2013 SCC                        - 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                  ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _Cynthia Fulton_____        Date: ____June 6, 2014____

Counsel for: Fulton Friedman & Gullace, LLP

## CERTIFICATE OF SERVICE
****************************

I certify that on ____June 6, 2014____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_Cynthia Fulton_____                    ____June 6, 2014____
        (signature)                                      (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE – PALISADES ACQUISITION XVI, LLC

CORPORATE DISCLOSURE – FULTON FRIEDMAN & GULLACE, LLP

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.  DISCUSSION OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     1.     The District Court's use of the three factor test established by the 7th Circuit was appropriate, and the District Court properly concluded that filing the Assignment was not collection activity. . . . . . . . . . . 12

     2.     The District Court rightly concluded that the Assignment of Judgment was not materially false. . . . . . . . . . . . . . . . . . . . . . . . . . 19

     3.     Appellant Has Not Alleged Any Basis for a Section 1692f Claim. .  25

     4.     Appellant Did Not Make 85 Payments Towards Her Debt. . . . . . .  25

     5.     The Rooker-Feldman Doctrine and the Doctrine of Collateral Estoppel Cannot be Invoked. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

     6.     Appellees Did Not Attempt to Enforce a Right That Does Not Exist in Violation of the MCDCA. . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,

    477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d (1986) . . . . . . . .  11

Bishop v. Quicken Loans, Inc.,

    2010 WL 3522128 *5 (S.D. W.Va. Sept. 8, 2010) . . . . . . . . . . . . . . . 21

Boosahda v. Providence Dane LLC,

    462 Fed.Appx. 331, 334-5 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 19

Celotex v. Catrett,

    477 U.S. 317, 322-3 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Connecticut Nat. Bank v. Germain,

    503 U.S. 249, 253, 112 S. Ct. 1146, 1149 (1992) . . . . . . . . . . . . . . . . . . 14

Davanni v. Virginia Dept. of Transp.,

    434 F.3d 712, 713 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

Donohue v. Quick Collect, Inc.,

    592 F.3d 1027, 1033 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

Gburek v. Litton Loan Servicing, LP,

    614 F. 3d 380, 385 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Goodrow v. Friedman & MacFayden, P.A.,

    788 F.Supp.2d 464, 471 (E.D. Va. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 13

Grden v. Leiken Ingber & Winters PC,

    643 F.3d 169, 173 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hahn v. Triumph P'ships LLC,

    557 F.3d 755, 757-58 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hill v. Lockheed Martin Logistics Mgmt.,
354 F.3d 277, 283 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Holland v. Psychological Assessment Res., Inc.,
482 F.Supp.2d 667, 673 (D. Md. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Johnson v. Brock & Scott, PLLC,
2012 WL 4483916 *17 (E.D.N.C. Sept. 27, 2012) . . . . . . . . . . . . . . . . . . . 13

Johnson v. Brock & Scott, PLLC,
2013 WL 6058199 *3-5 (E.D.N.C. Nov. 15, 2013) . . . . . . . . . . . . . . . . . . 13

Kelly v. Nationstar Mortgage, LLC,
2013 WL 5874704 *3-4 (E.D. Va. Oct. 31, 2013) . . . . . . . . . . . . . . . . 13, 18

Laber v. Harvey,
438 F.3d 404 (4th Cir. 2006)(en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lembach v. Bierman,
528 Fed.Appx. 297, 303-4 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp,
475 U.S. 574, 585, 106 S.Ct. 1348, 1356 (1986) . . . . . . . . . . . . . . . . . . . 11

Maynard v. Cannon,
401 Fed.Appx. 389, 395 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Miller v. Javitch, Block & Rathbone,
561 F.3d 588, 596 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

Murray Int'l Freight Corp. v. Graham,
315 Md. 543, 547 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Nash v. Green Tree Servicing, LLC,
2013 WL 1867357 *11 (E.D. Va. May 2, 2013) . . . . . . . . . . . . . . . . . . . . . 13

Olson v. Midland Funding, LLC,

    2013 WL 6717480 *4-5 (D. Md. Dec. 18, 2013) . . . . . . . . . . . . . . . . . . . .  13

Penn v. Cumberland,

    883 F.Supp.2d 581, 587-8 (E.D. Va. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 13

Planned Sys. Int'l, Inc. v. Fed. Tech. Corp.,

    72 Fed.Appx. 903, 905 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Stoll v. Alton,

    189 Md. 341, 345 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Nat'l Fin. Servs., Inc.,

    98 F.3d 131, 136 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. v. Santos,

    553 U.S. 507, 511-12, 128 S. Ct. 2020, 2024 (2008) . . . . . . . . . . . . . . . . . 15

Wilson v. Draper & Goldberg, P.L.L.C.,

    443 F.3d 373 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**FEDERAL STATUTES**

15 U.S.C. §1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

15 U.S.C. §1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 20, 25

15 U.S.C. §1692e(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

15 U.S.C. §1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §1692k(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATE STATUTES

Md. Code Ann., Art. 8 § 1 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Md. Code Ann., Art. 8 § 4 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Md. Code Ann., Com. Law §§13-101 *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . . . 1

Md. Code Ann., Com. Law §§14-201 *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . . . 1

## FEDERAL RULES

Fed. R. Civ. P. 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 56(c) (in effect prior to December 1, 2010) . . . . . . . . . . . . . . . 11

## STATE RULES

Md. Rule 604(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Md. Rule 1-201(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Md. Rule 2-624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Md. Rule 3-624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Md. Rule 3-306(d)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Md. Rule Civ. P. 240 a (The Michie Company 1984) (1958) . . . . . . . . . . . . . . 17

Md. Rule of Civ. P. 617 a (The Michie Company 1984)(1958) . . . . . . . . . . . . . 17

## LEGISLATIVE MATERIAL

Debt Collection Practices, H.R. 10191, 94th Cong. §804 (1975) . . . . . . . . . . . . .14

Debt Collection Practices, H.R. 10191, 94th Cong. §805 (1975) . . . . . . . . . . . . 14

H. Rep. No. 95-131 at 2-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

S. Rep. No. 95-382 at 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **OTHER AUTHORITIES**

Black's Law Dictionary 328 (4th ed. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Commentary on the New Maryland Rules of Civil Procedure,
　　43 MD. L. Rev. 669, 835-6 (1984) (former Md. Rule 240 a, and
　　former Md. Rule 617 a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Court of Appeals Standing Committee on Rules of Practice and Procedure,

　　Minutes May 21 / 22, 1982 at 7 (Maryland) . . . . . . . . . . . . . . . . . . . . . . . 18

Oxford English Dictionary 476 (2d ed. Vol. III 1989) . . . . . . . . . . . . . . . . . . . . 15

Oxford English Dictionary 478 (2d ed. Vol. III 1989) . . . . . . . . . . . . . . . . . . . . 15

Oxford English Dictionary 746 - 47 (2d ed. Vol. III 1989) . . . . . . . . . . . . . . . . . 15

## JURISDICTIONAL STATEMENT

Plaintiff took this appeal from the Order issued by the Honorable Richard D. Bennett granting Defendants' Motion for Summary Judgment and denying Plaintiff's Motion for Partial Summary Judgment entered January 29, 2014.

Jurisdiction in the District Court for the District of Maryland is based on federal question jurisdiction pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

Plaintiff also alleged state law violations of the Maryland Consumer Debt collection Act, (Md. Code Ann., Com. Law §§14-201 *et seq.*) and Md. Consumer Protection Act, (Md. Code Ann., Com. Law §§13-101 *et seq.*) which were adjudicated in the Court's Order.

Judgment was entered January 29, 2014. (JA 612.)  This Court has jurisdiction pursuant to 28 U.S.C. §§1291 and 1294  Plaintiff filed a Notice of Appeal on February 24, 2014.  (JA 613.)

## STATEMENT OF CASE

Aleta Powell opened a credit card account with Direct Merchants Bank on September 18, 1998.  JA 245, JA 267 lines 1-5.  Ms. Powell defaulted in her repayment obligations and became indebted to Direct Merchants Bank in the amount of $8,205.24.  JA 330-1, JA 14 paragraph 23, JA 333-4.  Direct Merchants Bank charged off the account in that amount on January 31, 2001.  JA 245.  Direct Merchants Bank then sold Ms. Powell's defaulted account to Platinum Financial Services, Inc. ("Platinum").  JA 267 lines 3-10.

On or about September 26, 2001, Platinum retained the law offices of Wolpoff & Abramson, L.L.P. ("W&A") to represent it in legal proceedings to recover the debt.  JA 267 lines 11-19.  A complaint was filed against Ms. Powell on November 19, 2001.  JA 336-9.  Ms. Powell was personally served with the complaint on December 11, 2001, and she filed a Notice of Intention to Defend on that same day.  JA 336-9, JA 341.  On or about December 28, 2001 W&A served interrogatories on Ms. Powell, which she answered on or about March 28, 2002.  JA 343-4, JA 330-1.  Ms. Powell entered into a stipulation dated March 29, 2002 with Platinum to pay the debt in full plus interest at the rate of 21.99% per annum from January 31, 2001 by making monthly payments beginning April 15, 2002 (the "Stipulation").  JA 333-4, JA 270 lines 10-16.  Ms. Powell made 11 of the required

payments totaling $3,250.00. JA 346-365, JA 367, JA 38, JA 442 lines 19-25, JA 443 lines 1-20.

Ms. Powell failed to make any payments after March 19, 2003, and as the result of her default under the Stipulation, Platinum through W&A filed a Motion for Judgment. JA 369-373. The motion was granted in favor of Platinum, and a judgment was entered against Ms. Powell in the amount of $9,216.43 plus attorneys' fees of $1,230.78, costs of $50.00 and post judgment interest at the statutory rate of 10%. JA 245, JA 375. The judgment award accurately reflected the agreement reached between Ms. Powell and Platinum and took into account all the payments she had made to date. JA 334, JA 369-373, JA 375, JA 38-9.

The total judgment award of $10,497.21 comprised the undisputed balance of $8,205.24 plus prejudgment interest in the amount of $1,011.19, attorneys' fees in the amount of $1,230.78 and costs of $50.00. JA 375. Prior to judgment being entered, interest accrued at the rate of 21.99% per annum ($4.94337609863 per diem) from January 31, 2001 the date of charge off by the original creditor to June 12, 2003, when the application for judgment was made. JA 333-4, JA 336-9, JA 369-373. There were 862 days between January 31, 2001 and June 12, 2003, and 862 x $4.94337609863 = $4,261.19, which was the amount of prejudgment interest awarded. JA 369-373, JA 375. The undisputed sum of all payments made prior to judgment in the amount of $3,250.00 was applied solely to prejudgment interest,

3

because the payments were never large enough to reduce the principal.  JA 369-373, JA 375.  The application of the payments reduced the prejudgment interest award to $1,011.19.  JA 369-373, JA 375.  Pursuant to the Stipulation, Ms. Powell agreed to pay attorneys' fees in the event of default at the rate of 15% of the principal balance ($8,205.24 x 0.15 = $1,230.78).  JA 334.  The amount of Ms. Powell's debt under the judgment is a question of mathematics and is known with certainty.  JA 245-250.

On or about August 21, 2003, Platinum through W&A filed a Request for Garnishment.  JA 377.  Ms. Powell then filed a Motion for an exemption to the Request for Garnishment on or about August 23, 2003.  JA 379-380.  A hearing was set for September 10, 2003.  Ms. Powell appeared at the courthouse as well as W&A attorney Ron Canter, Esq.  JA 288 lines 6-18.  An agreement was reached between Mr. Canter and Ms. Powell wherein the writ of garnishment would be quashed, and Ms. Powell would be required to make monthly payments of $150 beginning September 12, 2003 and increasing to $250 per month beginning September 12, 2004 with "judgment interest to be waived as long as timely payments made" (the "Court Agreement").  JA 382, JA 288 lines 6-18, JA 289 lines 1-5, JA 38-9.  Thereafter, Ms. Powell made 18 payments each in the amount of $150.00 totaling $2,700.00.  JA 346-365, JA 367, JA 38-9, JA 442 lines 19-25, JA 443 lines 1-20.  Ms. Powell did not increase the amount of her payments on

4

September 12, 2004 as agreed.  JA 346-365, JA 367, JA 38-9.  Ms. Powell made the last payment towards her debt on May 25, 2005, while there was still a balance due and owing.  JA 346-365.  Consequently she was in default of the Court Agreement.  JA 382.  Once Ms. Powell defaulted, Platinum was entitled to assess the judgment interest it had conditionally waived.  JA 382.  Ms. Powell has made no payment towards the debt since May 25, 2005.  JA 291 lines 21-22, JA 292 line 1.

On March 5, 2007 Platinum sold the judgment against Ms. Powell to Palisades Acquisition, XV, LLC.  On that same day the judgment was then sold to Palisades Acquisition, XVI, LLC ("Palisades"), Defendant herein.  JA 384-394, JA 396.  On June 27, 2008 W&A merged with and into Mann Bracken, LLP ("Mann Bracken").  See District of Columbia Secretary of State Corporations Division.  On or about February 23, 2010 Mann Bracken filed for receivership.  On February 8, 2010 NCO Financial Systems, Inc., ("NCO") servicing agent for Palisades retained the law offices of Fulton Friedman & Gullace, LLP ("FF&G"), Appellee herein, to represent Palisades in connection with Ms. Powell's account.  JA 398-400.  After Mann Bracken filed for receivership, it provided to its clients a computer text file of certain electronic data (referred to as a 'work card' and referred to as a "flat file" by appellant) that it had maintained for its accounts.  JA 398-400, JA 346-365.  The "work card" pertaining to Ms. Powell's account (the "Work Card"), which

5

contained a record of all the payments she made towards her debt was provided to

FF&G by its client NCO. JA 398-400, JA 346-365. The balance on Ms. Powell's

account as of December 25, 2009 according to the Work Card was $10,190.61. JA

347. When NCO referred the account to FF&G it provided FF&G with a current

balance of $10,526.88 as of February 5, 2010, which included principal and

interest. JA 398-421. This appears as the first entry in the FF&G account History

Detail. JA 406.

To manage accounts referred to it, FF&G uses an electronic software filing

system known as JST Collectmax ("JST"). JA 398-421. Each account referred to

FF&G receives its own JST file. JA 398-421. The user interface for each JST file

contains numerous "screens" and "sub-screens," which in turn contain information

fields that can be populated by data either uploaded from a client or entered

manually by FF&G employees. JA 398-421. Every action that is taken by a user

in a particular file is recorded in an account history, which is ordered

chronologically by both date and time. JA 398-421. One "screen" in JST contains

information about the amount due. JA 398-421. It is called the "Claim" screen,

and it stores and displays data about the debt including the current balance and any

interest that might be accruing. JA 398-421. The information in this Claim screen

is not static, because the balance on an account will change as interest accrues,

costs are incurred or payments and/or credits are posted. JA 398-421. It is not

6

possible to determine by looking at the account history what the balance was on a particular file for any given day.  JA 398-421.

On June 30, 2010, Ms. Powell's file was reviewed by Kelly E. Macbeth, Esq., an attorney employed by FF&G in its Maryland office.  JA 398-421.  Ms. Macbeth entered the information about Ms. Powell's judgment into a "screen" in JST which stores information about judgments.  JA 398-421.  Ms. Macbeth reviewed the Work Card pertaining to Ms. Powell's account and credited her with the payments she had made after judgment was entered totaling $2,700.  JA 398-421.  This reduced the opening balance of $10,526.88 to $7,826.88, and this was then used as the principal balance on which interest was accruing at the post judgment statutory rate of 10%.  Md. Rule 3-604(b).  JA 398-421.  Thus on June 30, 2010 the balance owed on Ms. Powell's account in FF&G's records was $7,826.88 plus the interest that had accrued from February 5, 2010.

On or about June 30, 2010, FF&G notified Ms. Powell by letter that her account had been transferred to its offices.  JA 423, JA 398-421.  On June 30, 2010 the amount Ms. Powell owed under the judgment was $13,466.93.  JA 245-250.  The letter stated that the total due was $8,137.81 ($7,826.88 plus interest).  JA 423.  Ms. Powell testified that she had never seen the letter.  JA 297 lines 17-22, JA 298 lines 1-4).  No further correspondence was sent to Ms. Powell by FF&G until nearly two years later on May 29, 2012, when FF&G mailed to Ms. Powell an

7

Assignment of Judgment ("Assignment") subsequently filed with the District Court of Maryland for Baltimore City. JA 425.

JST allows a firm to create templates for commonly used documents such as a complaint or an assignment of judgment. JA 398-421. At FF&G these templates are authored by attorneys. JA 398-421. The data contained in the information fields in each file in JST is used to populate these forms, when they are generated for a specific file. JA 398-421. The document is not therefore being created from scratch every time it is used. JA 398-421. Rather, a user requests that JST generate the document for a particular file and then print it. JA 398-421. In the case of the Assignment of Judgment at issue in this action, an FF&G paralegal did not author the Assignment of Judgment or manually enter the information contained therein. JA 398-421. A paralegal requested that JST generate the document and print it using a form, which had been authored by an attorney and populated with information that had been reviewed and entered into JST by an attorney. JA 398-421.

On May 29, 2012, the date that FF&G mailed a copy of the Assignment to Ms. Powell, she owed under the judgment $15,009.81. JA 245-250. When Ms. Powell received the Assignment she believed that she did not owe anything. JA 300 lines 6-19. FF&G filed an Amended Assignment of Judgment on October 12, 2012. JA 427. The Amended Assignment of Judgment was only provided to Ms.

Powell's attorney.  JA 427.  Ms. Powell testified in her deposition that she had never seen the Amended Assignment of Judgment.  JA 306 lines 4-14.  The Amended Assignment of Judgment accurately described the judgment entered against Ms. Powell.  JA 427.  The amount of the original judgment was not $8,205.24 but rather $9,216.43, which comprises the principal balance of $8,205.24 plus pre judgment interest in the amount of $1,011.19.  In the State of Maryland a Judgment includes any award of prejudgment interest.  Md. Rule 3-604(a).  JA 245-250, JA 369-373, JA 375.  Ms. Powell's Amended Complaint filed against Appellees contained no allegations about the Amended Assignment of Judgment.  JA 7-22.

On October 12, 2012 there was a hearing on Ms. Powell's Motion to Vacate the Judgment.  JA 429-481.  At the hearing the court ruled on the motion and vacated the judgment, because Palisades did not produce a record of the payments made by Ms. Powell at the hearing (JA 478 lines 8-14) and did not produce evidence that the Bill of Sale attached to the Assignment, which referred to the transfer of "accounts," pertained to Ms. Powell's account in particular.  JA 475 lines 18-22, JA 470 lines 21-25.  The original claim was left open and undecided.

FF&G has searched for assets of Ms. Powell including a place of employment and banking institution but to date has found none.  JA 398-421.  Appellees never attempted to enforce the judgment against Ms. Powell.

## SUMMARY OF THE ARGUMENT

The District Court rightly adopted and applied the three factor analysis developed by the 7th Circuit to determine if a communication or activity is to collect a debt or in connection with the collection of a debt. Both the meaning of the phrases and the purpose of the FDCPA require a court to take into consideration whether the activity or communication in question contains a demand for payment or otherwise would induce payment. Filing the Assignment at issue in this case was not collection activity, because it did not contain a demand for payment and did not have the power to induce payment. An Assignment of Judgment serves to preserve a right of the assignee with the court similar to the filing of a proof of claim in a bankruptcy proceeding. The District Court taking into account the facts associated with this case determined that was the purpose of the filing of the Assignment. The District Court's ruling should be affirmed.

The District Court properly analyzed Appellees' materiality defense. The District Court considered the Assignment in the factual context of the case and concluded that the error was immaterial, because at the time the Assignment was received by her, Ms. Powell believed she owed nothing. The District Court's approach did not introduce subjectivity into the objective least sophisticated consumer test. Other objective tests used by courts also take into account case specific facts. Even if the fact of Ms. Powell's belief is set aside, the error in the

Assignment was not material because it was not so misleading that it would frustrate the ability of a least sophisticated consumer to make an intelligent response. The District Court's ruling on this issue should also be affirmed.

## ARGUMENT

## A. STANDARD OF REVIEW

Summary judgment was entered in favor of the Defendants pursuant to Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).[1] This Court reviews that order *de novo*. See, Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006)(*en banc*); Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 283 (4th Cir. 2004).

If a reasonable jury could not find in favor of the nonmoving party then there is no genuine dispute as to any material fact, and summary judgment must be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). The opponent of a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585, 106

---

[1] Appellant cites in her brief to a prior version of Fed. R. Civ. P. 56(c), which was replaced effective December 1, 2010. The language of the Rule has changed, but the standard of review has not.

S.Ct. 1348, 1356 (1986).  Summary judgment is appropriate where "a party…fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322-3 (2006).

**B. DISCUSSION**

**1. The District Court's use of the three factor test established by the 7th Circuit was appropriate, and the District Court properly concluded that filing the Assignment was not collection activity.**

Appellant alleges that Appellees violated sections 1692e, 1692e(2)(A), 1692e(10), 1692f and 1692f(1) of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq. ("FDCPA") by allegedly overstating the amount of  Ms. Powell's debt and by filing an Assignment of Judgment without proof of a valid assignment. Sections 1692e and 1692e(2)(A) state that "*a debt collector* may not use any false, deceptive or misleading representation or means *in connection with the collection of any debt* including falsely representing the amount of any debt.  Section 1692e(10) states that *a debt collector* may not use "any false representation or deceptive means to *collect or attempt to collect any debt*…"  Sections 1692f and 1692f(1) state that "*a debt collector* may not use unfair or unconscionable means *to collect or attempt to collect any debt*" which includes collecting any amount which is not authorized by the contract underlying the debt or permitted by law.

12

In order to determine if Appellees' conduct was to collect a debt or in connection with the collection of a debt, the District Court used a three factor analysis that was developed by the 7th Circuit (Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010)), and which has also been adopted by other circuits[2] as well as used by lower courts in the 4th Circuit.[3]  The District Court determined that although the only relationship between the parties was that of debtor and debt collector, the Assignment was not collection activity, because the Assignment contained no demand for payment and was not an action against the consumer capable of inducing payment but rather served to establish a right of the filing party with the court much like filing a proof of claim.  For the reasons that follow, this Court should affirm the District Court's ruling.

Appellant argues that the three factor analysis should be abandoned, because it does not support the remedial goals of the FDCPA, and that when assessing whether a communication or activity was "in connection with the collection of any debt" or "to collect a debt" a court should only consider the relationship between

---

[2] Grden v. Leiken Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011), Maynard v. Cannon, 401 Fed.Appx. 389, 395 (10th Cir. 2010).
[3] Penn v. Cumberland, 883 F.Supp.2d 581, 587-8 (E.D. Va. 2012), Johnson v. Brock & Scott, PLLC, 2012 WL 4483916 *17 (E.D.N.C. Sept. 27, 2012), Goodrow v. Friedman & MacFayden, P.A., 788 F.Supp.2d 464, 471 (E.D. Va. 2011), Nash v. Green Tree Servicing, LLC, 2013 WL 1867357 *11 (E.D. Va. May 2, 2013), Kelly v. Nationstar Mortgage, LLC, 2013 WL 5874704 *3-4 (E.D. Va. Oct. 31, 2013), Olson v. Midland Funding, LLC, 2013 WL 6717480 *4-5 (D. Md. Dec. 18, 2013), Johnson v. Brock & Scott, PLLC, 2013 WL 6058199 *3-5 (E.D.N.C. Nov. 15, 2013).

the parties.  Appellant contends that if the only relationship between the parties is that of debtor and debt collector then the activity or communication should be presumed to be in connection with the collection of any debt or to collect a debt.

As an initial matter, FDCPA claims can only be brought against debt collectors, so that should always be the relationship between the parties in an FDCPA action.  Furthermore, the Supreme Court has also held that "courts should disfavor interpretations of statutes that render language superfluous."  Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253, 112 S. Ct. 1146, 1149 (1992).  Such an analysis would render the phrases "to collect a debt" and "in connection with the collection of any debt" mere redundancies, because the first part of the sentence which precedes the enumerated prohibitions states that "a debt collector may not…"  The FDCPA was enacted to eliminate abusive, unfair and deceptive debt collection *practices* by debt collectors, such as misrepresenting a consumer's legal rights or obtaining information through false pretense. 15 U.S.C. § 1692 and S. Rep. No. 95-382 at 2, H. Rep. No. 95-131 at 2-3.  It is clear by the inclusion of the phrases "to collect a debt" and "in connection with the collection of any debt" from the very earliest version of the legislation that Congress contemplated that a debt collector could engage in activity that was not debt collection and such activity was not meant to be regulated by the statute.  See Debt Collection Practices, H.R. 10191, 94th Cong. §§ 804 and 805 (1975).

14

Although "debt" and "debt collector" are defined in the statute, the terms "to collect" and "in connection with the collection" are not given any particular meaning. The Supreme Court has held that when a term is undefined in a statute it is to be given its ordinary meaning, while also considering its context within the statute. U.S. v. Santos, 553 U.S. 507, 511-12, 128 S. Ct. 2020, 2024 (2008). To collect in its transitive form means most generally "to gather together" but also has a colloquial meaning "to receive money or to get paid." The Oxford English Dictionary 476 (2$^d$ ed. Vol. III 1989). Collection is defined as "the gathering in of money due, as taxes or private debts." The Oxford English Dictionary 478 (2$^d$ ed. Vol. III 1989). Early versions of Black's Law Dictionary contained a definition of collect, which included an example of collection of a debt defining it as "to obtain payment or liquidation of it..." Black's Law Dictionary 328 (4th ed. 1951). Connection is defined as the condition of being connected or the condition of being related to something else or relation between things one of which is bound up or involved in another. The Oxford English Dictionary 746-7 (2$^d$ ed. Vol. III 1989). Put simply to collect a debt means to "gather in" payment or receive payment of it. In connection with the collection of a debt means something that is related to receiving payment.

Considering the meaning of the phrases as described above and the preference for not interpreting statutory language in such a way as to render it

15

superfluous, the District Court rightly adopted the analysis employed by the 7th Circuit.  It is necessary to take into consideration whether there is demand for payment or whether the animating purpose is to induce payment, because collection of a debt is receiving payment of it.

In fact in <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373 (4th Cir. 2006) this Court analyzed whether defendants had acted in connection with a debt. In its analysis this Court considered whether there was demand for payment.  <u>Id</u> at 376.  The Court noted that the letter in question contained a request for money to reinstate the account and contained instructions on how to pay the account including who to make a check payable to and the address to mail payment.  <u>Id</u> at 376-7.  The Court stated that "by sending a letter seeking payment of an amount to 'reinstate the above account' and directing Wilson to pay that amount by cashiers [sic] check, Defendants sought to collect a [debt]."  <u>Id</u> at 377.

Filing an Assignment of Judgment is not collecting a debt or in connection with the collection of a debt, because as the District Court rightly concluded, it does not contain a demand for payment nor is it an inducement to pay.  Appellant likens an assignment of judgment to a pleading or a motion, but it is clearly not like either of those things.[4]  Pleadings and motions are made during the course of litigation and ask the court to take some action against the opposing party or to

---

[4] The Appellant cites no case where the court was actually asked to decide whether a complaint or a motion was collection activity.

16

provide some relief to the movant.  Filing a pleading or a motion triggers action or response from the opposing party.  Filing an assignment of judgment is not litigation.  It is a post litigation filing, which notifies the court, the assignee's predecessor(s), and the consumer that there is new ownership of the judgment.  It is not asking the court to take any action or to provide any relief nor does it cause the court to take any action (aside from transmitting the assignment to other courts where the judgment has been filed).

Md. Rule 3-624 and its counterpart Md. Rule 2-624, which permit the filing of Assignments of Judgment were first codified in 1984 and then amended in 1986 to include language clarifying that the rules were not meant to address the assignability of a judgment.  The Rules combine elements of former Md. R.P. 240 a and Md. R.P. 617 a.  Commentary on the New Maryland Rules of Civil Procedure, 43 MD. L. Rev. 669, 835-6 (1984).  Rule 240 a stated that an assignee of a judgment "may issue execution in his own name."  Maryland Rules of Procedure (The Michie Company 1984) (1958).  The Editor's Note to Rule 240 a states that the section combines the substance of article 8 §§ 1 and 4 of the 1951 Code.  Article 8 § 1 of the Code states that the assignee of a judgment may by virtue of a written assignment issue an execution in his own name in the same manner as the assignor could have done.  Annotated Code of Maryland Art. 8 § 1 (repealed).

17

Execution is simply a right that the assignee has. The District Court's analogy to a proof of claim was apt. Filing an assignment of judgment is not an effort to obtain payment, but it is "prudent to file the assignment…in order to protect the assignee's 'equitable interest' in the judgment." <u>Stoll v. Alton</u>, 189 Md. 341, 345 (1947), JA 543 lines 5-8. A court is also interested in encouraging the production of a written assignment, because it promotes consistency in judicial records, which appears to be one of the purposes of Md. Rule 3-624, in light of the transmission scheme it also contains. <u>See</u> <u>Court of Appeals Standing Committee on Rules of Practice and Procedure</u>, Minutes May 21/22, 1982 at 7. Once a judgment is rendered, there presumably will continuously be a person or entity entitled to collect or enforce it. As the Maryland Court of Appeals pointed out in reference to assignments of judgment, "the judgment is due and it cannot matter to the defendants to whom it is paid…" <u>Stoll</u> at 345. A change in ownership of the judgment is not collection of the judgment or an inducement to pay the underlying debt.

In the context of the Assignment at issue here, there were no external factors that would render the Assignment a demand for payment or an inducement to pay the debt. For instance the Assignment was not sent in the same envelope as a dunning letter. <u>Kelley v. Nationstar Mortgage, LLC</u>, 2013 WL 5874704 *4 (E.D. Va. Oct. 31, 2013). In fact, it was mailed to Ms. Powell over two years after any

18

type of dunning letter was sent.  There is no balance due stated nor are there any instructions regarding payments and where to send them.  Nor was it filed in anticipation of enforcing the judgment.  Although FF&G had looked for assets of Ms. Powell it had not found any to date.  It had no means of immediate enforcement of the judgment and never attempted to enforce it.  Mr. Whiteman stated in his deposition that enforcement was the "long term view."  JA 543 lines 20-22.  Nothing in the language of the assignment itself suggests that payment was immediately due or that enforcement was imminent, nothing in the Assignment even suggests that the Assignee can now enforce the judgment.

The Assignment contained the sentence "this communication is from a debt collector" which the Appellant contends amounts to an admission by Appellees that the Assignment was collection activity.  Many Courts have held that inclusion of that statutory phrase does not constitute an admission of any kind.  See Boosahda v. Providence Dane LLC, 462 Fed.Appx. 331, 334-5 (4th Cir. 2012).  The District Court's ruling should be affirmed.

## 2. The District Court rightly concluded that the Assignment of Judgment was not materially false.

As an initial matter Appellant states that the District Court recognized that the amounts stated in the Amended Assignment were false and that Appellees acknowledged the same.  This is blatantly untrue; the District Court did not

19

consider the Amended Assignment of Judgment in its ruling.  Powell made no

allegations in her Amended Complaint concerning the Amended Assignment of

Judgment.  Nowhere have Appellees acknowledged that the amounts stated in the

Amended Assignment of Judgment were false, because they are completely

accurate.

Appellant argues that the Amended Assignment was false in part because the

internal records of FF&G (which were not communications made to Ms. Powell)

indicate that a different amount was due.  First, it is not possible to determine just

by looking at the account history notes of FF&G what the balance on Ms. Powell's

account or any account in JST was on a particular day.  On June 30, 2010 the notes

do not show that Ms. Powell owed $10,497.21.  The figure that Ms. Powell points

to in her brief is not the account balance.  On June 30, 2010 FF&G's records show

that Ms. Powell owed $10,526.88 less the $2700.00 in payments applied by Ms.

Macbeth (FF&G's then Maryland attorney) plus the statutory interest that had

accrued for a total of $8,137.81.  This figure is significantly less than what Ms.

Powell owed under the judgment.  By the terms of the judgment, on that day she

owed $13,466.93.

Ms. Powell alleges that FF&G violated section 1692e by falsely representing

the amount of her debt in the Assignment.  The 4th Circuit has held that in order to

be actionable any false representation under section 1692e must be materially

20

false.  Lembach v. Bierman, 528 Fed.Appx. 297, 303-4 (4th Cir. 2013) citing

Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010), Hahn v.

Triumph P'ships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009) and Miller v. Javitch,

Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009).  To be materially false the

statement must be so misleading to the "least sophisticated consumer" that it

frustrates his or her "ability to intelligently choose a response."  Donohue, at 1034.

The "least sophisticated consumer" standard is an objective standard, which is

designed to protect even the naïve or gullible consumer, though this Court and

most courts have interpreted it to incorporate an element of reasonableness.  United

States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996).

In considering the materiality of the false statement in the Assignment, the

District Court took into account the fact that Ms. Powell believed that she had paid

the debt in full, when she received the Assignment.  Appellant contends that the

District Court thereby introduced subjectivity into an analysis that is supposed to

be objective.  Applying the least sophisticated consumer standard in the context of

a particular case's fact pattern does not introduce subjectivity.  For instance, the

"reasonably prudent person" test employed by courts in contract and tort actions is

an objective test, which requires the court to analyze specific facts in a case to

determine what a reasonably prudent person standing in the shoes of the plaintiff

would have done.  See Bishop v. Quicken Loans, Inc., 2010 WL 3522128 *5 (S.D.

21

W.Va. Sept. 8, 2010), <u>Holland v. Psychological Assessment Res., Inc.</u>, 482

F.Supp.2d 667, 673 (D.Md. 2007), <u>Planned Sys. Int'l, Inc. v. Fed. Tech. Corp.</u>, 72

Fed.Appx. 903, 905 (4th Cir. 2003) (unreported).

Here, the District Court reasoned that any amount stated in the Assignment

was immaterial, because no matter what it had stated Ms. Powell or a least

sophisticated consumer standing in her shoes would have contested it, because she

believed that she owed nothing.  Even if the Assignment had had no errors in it, a

person who believed she owed nothing would still have contested it.  Appellant

tries to argue that the District Court's reasoning would lead to unascertained errors

going unpunished, but the District Court's logic had nothing to do with whether the

error was ascertained or ascertainable.  Ms. Powell did perceive that the

Assignment had an error in it (JA 301 lines 21-22, JA 302 line 1), but it did not

cause her to act differently, because she also believed that she had paid the debt in

full.

Even if one considers the Assignment outside the factual context of this

case, there is no course of action that would have been foreclosed to a least

sophisticated consumer on account of the error in the Assignment.  <u>See Donahue</u>,

<u>supra</u> at 1034.  Ms. Powell has never articulated what different action she or a least

sophisticated consumer might have chosen had the Assignment been completely

accurate.  <u>Id.</u>  A judgment was owed and a consumer could ignore the Assignment,

contest it or contact the new owner of the judgment. Even if Ms. Powell or a least sophisticated consumer had viewed the Assignment as a statement of what was owed and paid it, she would not have paid more than she was legally obligated to pay, because, as the District Court pointed out, at the time the Assignment was provided to Ms. Powell, it is beyond a doubt that she owed considerably more than any amount it stated.

There is no obligation to update a judgment. If a judgment is entered against someone in the amount of $10,000 and the next week this person pays a portion of that amount there is still a judgment entered against him or her in the amount of $10,000 until a satisfaction is filed. Likewise Assignments of Judgment, if they contain balance information, are not updated. If Ms. Powell had been making regular payments on the judgment any payments made subsequent to the filing of the assignment would not be reflected in the assignment, and it would become inaccurate. FF&G never attempted to enforce the judgment. Any of FF&G's efforts to collect the debt were in the amount of the current balance contained in its own records, which was considerably less than she actually owed. Collecting less than someone owes is not the type of practice that the FDCPA was designed to eliminate.

Appellant also argues that the Maryland state courts ruled that "Palisades did not have sufficient proof of an assignment, and thus was not the owner of the

23

judgment." This is patently false and a simple reading of the transcript of the state court proceeding confirms this.[5] The state court ruled that the Bill of Sale Palisades provided as evidence of ownership, which refers to the sale of accounts listed in an attachment to a purchase and sale agreement did not itself indicate that it conveyed ownership of Ms. Powell's debt in particular, and therefore Palisades had not proved ownership of the debt. There is no brand of logic that would support Appellant's conclusion that Palisades does not own Ms. Powell's debt, because it failed to provide sufficient proof at a motion hearing. In fact it has been shown by the Bill of Sale including an excerpt from the schedule of accounts pertaining to Ms. Powell's debt and by the Affidavit of Steve Braun that Palisades is and has been the owner of Ms. Powell's debt since 2007.

The District Court's analysis of the materiality defense was sound, and its ruling on this issue should be affirmed.

---

[5] The opinion of the Circuit Court for Baltimore City mentions Maryland Rule 3-306(d)(3)(B), which applies to *pre*-judgment pleadings only. Even if it did apply to post judgment pleadings, the excerpt that is quoted by the Circuit Court for Baltimore City refers to a committee note, which pursuant to Maryland Rule 1-201(e) is not considered law. The committee note reads that, "[i]f a bill of sale or other document transferred debts in addition to the consumer debt upon which the action is based, the documentation required by subsection (d)(3)(B) of this Rule *may* be in the form of a redacted document that provides the general terms of the bill of sale or other document and the document's specific reference to the debt sued upon." Nothing in the language of the note suggests that a bill of sale *must* make specific reference to the debt sued upon.

**3. Appellant Has Not Alleged Any Basis for a Section 1692f Claim.**

Ms. Powell alleges that the same conduct which violated section 1692e also violated section 1692f.  Claims brought under section 1692f are subject to the same materiality analysis as section 1692e claims. Consequently the error in the Assignment did not violate section 1692f, because it was not materially false. Furthermore, the 4th Circuit has concluded that section 1692f is used "to punish conduct that the FDCPA does not specifically cover."  Lembach at 304. Appellant's section 1692f claim is based on the same conduct on which its section 1692e claims are based; therefore it has not alleged any basis for a section 1692f violation.  Id.

**4. Appellant Did Not Make 85 Payments Towards Her Debt.**

An accurate record of *all* the payments that Ms. Powell made toward her debt was kept by the attorneys representing Palisades and its predecessor, and that record was provided to Palisades through its servicing agent, when Mann Bracken closed.  Ms. Powell testified under oath in the state court collection action that the spreadsheet she prepared for that hearing was a record of *all* the payments that she made towards her debt to W&A and Mann Bracken.  JA 442 lines 19-25, JA 443 lines 1-20.  Her data is corroborated by the accounting kept by W&A and Mann Bracken.  The total dollar amount of payments made by Ms. Powell is undisputed. Yet Appellant continues to state that she made 85 payments towards her debt rather

than the 29 that she actually made.  Ms. Powell herself cannot explain how the figure was arrived at, and she is unable to swear to it under the penalties of perjury as evidenced by her affidavit in Support of Summary Judgment.  JA 38-39.  In fact, the only person who appears to have any knowledge of the figure is Appellant's attorney, and he cannot serve as a witness in this action.

## 5. The Rooker-Feldman Doctrine and the Doctrine of Collateral Estoppel Cannot be Invoked.

The 4th Circuit has held that "the Rooker-Feldman doctrine applies *only* when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." Davanni v. Virginia Dept. of Transp., 434 F.3d 712, 713 (4th Cir. 2006) emphasis added.  That is clearly not the case here.  Consequently the Rooker-Feldman doctrine is not implicated.

Under Maryland law, collateral estoppel only applies "when an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment." Murray Int'l Freight Corp. v. Graham, 315 Md. 543, 547 (1989).  The amount of the debt and the issue of ownership were not litigated or determined by a final judgment in the state court action. Furthermore, identity of the parties is a prerequisite to invoking collateral estoppel, and FF&G was not a party to the state court action.  Id. at 549.  Consequently Appellant cannot invoke collateral estoppel in this case.

26

**6. Appellees Did Not Attempt to Enforce a Right That Does Not Exist in Violation of the MCDCA.**

Appellant states that the lower court erred in dismissing Appellant's state law claims. However, the lower court did not dismiss those claims. It granted summary judgment in favor of Appellees, because it determined that filing an assignment of judgment was not collecting or attempting to collect a debt, and even if it were Appellees had not attempted to enforce a right that did not exist by filing an assignment of judgment containing a clerical error. Appellees did not attempt to bring suit in a false amount as Appellant argues. As the owner of Ms. Powell's debt, Palisades had a right to file the Assignment, and it never attempted to collect any amount it was not owed. Therefore, Appellees did not violate the Maryland Consumer Debt Collection Act or by extension the Maryland Consumer Protection Act.

## CONCLUSION

This Court should affirm the decision of the District Court in this matter. The District Court rightly concluded that filing the Assignment of Judgment was not collection activity, because it did not demand payment, and its purpose was not to induce the appellant to pay her debt. Even if the Assignment were to be considered collection activity, the error contained therein would not so mislead a

27

least sophisticated consumer such that she would be unable to make intelligent
decisions with respect to her debt.

## REQUEST FOR ORAL ARGUMENT

Appellees join in the Appellant's request for oral argument. The issue of
whether filing an assignment of judgment constitutes collection activity is an
important determination to be made in the Fourth Circuit.

Respectfully submitted,

/s/ Megan E. Gullace
Megan E. Gullace
Fulton Friedman & Gullace, LLP
28 E. Main Street, Suite 500
Rochester, NY 14614


/s/ Cynthia L. Fulton
Cynthia Fulton
Fulton Friedman & Gullace, LLP
2345 E. Thomas Rd., Ste. 460
Phoenix, AZ  85016


Attorneys for
Palisades Acquisition XVI, LLC, and
Fulton Friedman & Gullace, LLP
Appellees

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. R. 32(a)(7)(B) because this brief contains 6,860 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii),

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font, and Times New Roman style,

<u>/s/ Megan Gullace</u>
Fulton Friedman & Gullace, LLP
28 E. Main Street, Suite 500
Rochester, NY 14614


<u>/s/ Cynthia Fulton</u>
Fulton Friedman & Gullace, LLP
2345 E. Thomas Rd., Ste. 460
Phoenix, Az  85016

Attorney for Appellees
Dated: June 6, 2014

29

## <u>CERTIFICATE OF FILING AND SERVICE</u>

On the 6th day of June, 2014, I filed the required copies of the foregoing

OPENING BRIEF OF APPELLEES with the Clerk of the Court via hand delivery

and electronically using the CM/ECF system, which will send a notice of

electronic filing to:

E. David Hoskins
Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Ste. 400
Baltimore, Md.  21202

Attorneys for Appellant

<u>/s/ Megan Gullace</u>
Fulton Friedman & Gullace, LLP
28 E. Main Street, Ste. 500
Rochester,  N.Y. 14614

<u>/s/ Cynthia Fulton</u>
Fulton Friedman & Gullace, LLP
2345 E. Thomas Rd., Ste. 460
Phoenix, Az  85016

Attorneys for
Palisades Acquisition XVI, LLC, and
Fulton Friedman & Gullace, LLP
Appellees

**ADDENDUM**
**RELEVANT PORTIONS OF STATUTES**

**15 U.S.C.§ 1692. Congressional findings and declaration of purpose**

(a) Abusive practices

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Inadequacy of laws

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Available non-abusive collection methods

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Interstate commerce

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) Purposes

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote

31

consistent State action to protect consumers against debt collection abuses.

CREDIT(S)

(Pub.L. 90-321, Title VIII, § 802, as added Pub.L. 95-109, Sept. 20, 1977, 91 Stat. 874.)

### 15 U.S.C. § 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(2)** The false representation of--

**(A)** the character, amount, or legal status of any debt; or

**(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

CREDIT(S)

(Pub.L. 90-321, Title VIII, § 807, as added Pub.L. 95-109, Sept. 20, 1977, 91 Stat. 877; amended Pub.L. 104-208, Title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009-425.)

### 15 U.S.C. § 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the

following conduct is a violation of this section:

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

CREDIT(S)

(Pub.L. 90-321, Title VIII, § 808, as added Pub.L. 95-109, Sept. 20, 1977, 91 Stat. 879.)

### Md. Code Ann., Art. 8 §1 (1951)

1. The assignee of any judgment, bond, specialty, or other chose in action for the payment of money, or any legacy or distributive share of the estate of a deceased person *bona fide* entitled thereto by assignment in writing signed by the person authorized to make the same, may, by virtue of such assignment, maintain an action or issue an execution in his own name against the debtor therein named, in the same manner as the assignor might have done before the assignment.

### Md. Code Ann., Art. 8 §4 (1951)

4. Any defendant may make the same legal or equitable defenses as might or could have been had and maintained against the assignor at the time or such assignment and before notice thereof, and to the same extent.

CREDITS

(An. Code, 1939, sec.4, 1924, sec. 4. 1912, sec. 4. 1904, sec. 4, 1888, sec. 4, 1830, ch. 165, sec. 2, 1880, ch. 161, sec. 4.)  Annotated Code of Maryland, Vol. 1, Horace E. Fleck (Edited) CR 1952, King Brothers, Inc., Baltimore, Md.

## Md CodeAnn., Com. Law§ 13-301. Unfair or deceptive trade practices defined

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

CREDIT(S)

Added by Acts 1975, c. 49, § 3, eff. July 1, 1975. Amended by Acts 1975 c. 431, § 1; Acts 1976, c. 507; Acts 1976, c. 907; Acts 1977, c. 362; Acts 1977 c. 376, § 2; Acts 1978, c. 673, § 1; Acts 1979, c. 65; Acts 1979, c. 536; Acts 1981, c. 388; Acts 1981, c. 502; Acts 1985, c. 710; Acts 1986, c. 506; Acts 1987, c. 577; Acts 1987, c. 650; Acts 1988, c. 6, § 1; Acts 1988 c. 268; Acts 1988 c. 269; Acts 1988 c. 588; Acts 1988 c. 589; Acts 1988 c. 775; Acts 1990, c. 223; Acts 1992, c. 342; Acts 1992, c. 537; Acts 1992, c. 642; Acts 1998, c. 653, § 1, eff. Oct. 1, 1998; Acts 1999, c. 34, § 1, eff. April 13, 1999; Acts 2002, c. 543, § 1, eff. Oct. 1, 2002; Acts 2003, c. 21, § 1, eff. April 8, 2003; Acts 2004, c. 25, § 1, eff. April 13, 2004; Acts 2004, c. 437, § 1, eff. June 1, 2004; Acts 2005, c. 25, § 1, eff. April 12, 2005; Acts 2005, c. 456, § 1, eff. July 1, 2006; Acts 2005, c. 521, § 1, eff. Jan. 1, 2006; Acts 2006, c. 491, § 1, eff. Oct. 1, 2006; Acts 2008, c. 5, § 1, eff. April 3, 2008; Acts 2008, c. 6, § 1, eff. April 3, 2008; Acts 2008, c. 36, § 1, eff. April 8, 2008; Acts 2008, c. 483, § 1, eff. July 1, 2008; Acts 2008, c. 532, § 2, eff. Jan. 1, 2009; Acts 2009, c. 60, § 1, eff. April 14, 2009; Acts 2009, c. 557, § 1, eff. Oct. 1, 2009; Acts 2010, c. 52, § 1, eff. Oct. 1, 2010; Acts 2010, c. 89, § 1, eff. Oct. 1, 2010; Acts 2010, c. 90, § 1, eff. Oct. 1, 2010; Acts 2011, c. 280, § 1, eff. Oct. 1, 2011; Acts 2011, c. 281, § 1, eff. Oct. 1, 2011; Acts 2012, c. 214, § 1, eff. Oct. 1, 2012; Acts 2012, c. 215, § 1, eff. Oct. 1, 2012.

Formerly Art. 83, § 20D.

**Md. Code Ann., Com. Law § 14-202. Certain acts prohibited**

In collecting or attempting to collect an alleged debt a collector may not:

> (8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; or

CREDIT(S)
Added by Acts 1975, c. 49, § 3, eff. July 1, 1975.
Formerly Art. 83, § 167.

## MD. RULE 2-624. ASSIGNMENT OF JUDGMENT

When a judgment has been assigned in writing by the judgment holder, the assignment may be filed in the court where the judgment was entered and in any court where it has been recorded. When an assignment is filed, the judgment may thereafter be enforced in the name of the assignee to the extent of the assigned interest.

CREDIT(S)

Adopted April 6, 1984, eff. July 1, 1984. Amended April 7, 1986, eff. July 1, 1986.

## MD. RULE 3-624. ASSIGNMENT OF JUDGMENT

When a judgment has been assigned in writing by the judgment holder, the assignment may be filed in the court where the judgment was entered. Upon the filing of an assignment, the clerk shall transmit a certified notice of the assignment to each clerk to whom a certified copy of the judgment was transmitted pursuant to Rules 3-621(c)(1) and 3-622(a) and to each circuit court clerk to whom a Notice of Lien of Judgment was transmitted pursuant to Rule 3-621. When an assignment is filed, the judgment may thereafter be enforced in the name of the assignee to the extent of the assigned interest.

CREDIT(S)

Adopted April 6, 1984, eff. July 1, 1984. Amended April 7, 1986, eff. July 1, 1986.

MD Rules, Rule 3-624, MD R RCP DIST CT Rule 3-624

### MD. RULE 3-306. JUDGMENT ON AFFIDAVIT

**(d) If Claim Arises from Assigned Consumer Debt.** If the claim arises from consumer debt and the plaintiff is not the original creditor, the affidavit also shall include or be accompanied by (i) the items listed in this section, and (ii) an Assigned Consumer Debt Checklist, substantially in the form prescribed by the Chief Judge of the District Court, listing the items and information supplied in or with the affidavit in conformance with this Rule. Each document that accompanies the affidavit shall be clearly numbered as an exhibit and referenced by number in the Checklist.

. . . . .

(3) *Proof of Plaintiff's Ownership.* The affidavit shall contain a statement that the plaintiff owns the consumer debt. It shall include or be accompanied by:

  (A) a chronological listing of the names of all prior owners of the debt and the date of each transfer of ownership of the debt, beginning with the name of the original creditor; and

  (B) a certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner, including the plaintiff.

CREDIT(S)

Adopted April 6, 1984, eff. July 1, 1984. Amended May 25, 1984, eff. July 1, 1984; Amended Sept. 8, 2011, eff. Jan. 1, 2012.

36

## MD. RULE 3-604. INTEREST

**(a) Pre-judgment Interest.** Any pre-judgment interest awarded shall be separately stated in the decision and included in the judgment.

**(b) Post-judgment Interest.** A money judgment shall bear interest at the rate prescribed by law from the date of entry.

CREDIT(S)

Adopted April 6, 1984, eff. July 1, 1984.

## MD. RULES OF PROCEDURE, Rule 240 a

*Action in Own Name.*

An assignee of any legacy or distributive share of the estate of a deceased person and an assignee of a judgment or any chose in action for the payment of money arising out of contract may maintain an action or issue execution in his own name subject to the same defenses which could have been made against the assignor at the time of and before notice of the assignment.
(Art. 8, §§ 1, 4.)

## MD. RULES OF PROCEDURE, Rule 617 a.

*Execution by Surety After Payment.*

Where a person shall recover a judgment against the principal debtor and surety, and the amount due on the judgment shall be satisfied by the surety, the creditor shall assign the same to the surety, and such assignment being filed in the court where the judgment was rendered, the assignee shall be entitled to execution in his own name against the principal for the amount so paid by the surety.
(Art. 8, §7.)

CREDITS
Maryland Rules of Procedure, Vol. 1, 1958, The Michie Company 1984 edition.